**CV 10-3834**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

FILED
U.S. DISTRICT COURT E.D.N.Y
★ AUG 19 2010 ★
BROOKLYN OFFICE

WEINSTEIN, J.
POLLAK, M.J

| | |
|---|---|
| COBBLE HILL HEALTH CENTER, INC., <br><br> *Plaintiff,* <br><br> -against- <br><br> SAFECO INSURANCE COMPANY OF AMERICA, <br><br> *Defendant.* | **COMPLAINT** <br><br> Case No.: |

Plaintiff, Cobble Hill Health Center, Inc. ("Cobble Hill"), by its attorneys, Tarter Krinsky & Drogin LLP, as and for its complaint (the "Complaint") against defendant Safeco Insurance Company of America ("Safeco"), alleges as follows:

## NATURE OF THE ACTION

1. In this action, Cobble Hill seeks to recover approximately $500,000.00 in monetary damages, together with interest thereon, on account of Safeco's failure to perform under a performance surety bond issued in connection with a construction project owned by Cobble Hill. By virtue of the failure of Safeco and its principal to complete the project and perform under the terms of the performance bond and the construction management agreement, Cobble Hill's project remains incomplete, subcontractors remain unpaid and numerous mechanics' liens have been filed against the property.

## THE PARTIES

2. Cobble Hill is a not-for-profit corporation formed and existing under the laws of the State of New York, with a place of business at 380 Henry Street, Brooklyn, New York 11201.

{Client\003188\CON126\00287419.DOC;2}

{Client\003188\CON\26\00287419.D...}

3. Upon information and belief, Safeco is an insurance company formed and existing under the laws of the State of Washington, with a place of business at 1200 MacArthur Blvd., Mahwah, New Jersey 07430.

## JURISDICTION AND VENUE

4. Cobble Hill is a New York not-for-profit corporation with its principal place of business located in New York. Safeco is a Washington insurance company with its principal place of business located in a state other than New York. The amount in controversy exceeds, exclusive of interest and costs, the sum of $75,000.00. Pursuant to 28 U.S.C. § 1332, this court has diversity jurisdiction over this action.

5. Pursuant to 28 U.S.C. § 1391(a)(2), venue lies in the Eastern District of New York because Cobble Hill's principal place of business is located in that district, and a substantial part of the events or omissions giving rise to Cobble Hill's claims occurred in that district.

## FACTS

6. Cobble Hill is the owner of a certain construction project located on real property commonly known as 822 Lexington Avenue, Brooklyn, New York 11221 (the "Project").

7. In connection with the Project, Cobble Hill entered into a construction management agreement (the "Agreement") with Cauldwell Wingate Company, LLC ("CW").

8. On or about July 9, 2008, Safeco, as surety, and CW, as principal, issued a performance bond, Safeco Bond No. 6554306 (the "Bond"), guaranteeing, jointly and severally, CW's performance under the Agreement to Cobble Hill. A copy of the Bond is annexed hereto as **Exhibit A**.

9. In or about March 2010, CW defaulted under the Agreement by, *inter alia*, filing mechanics' liens against the Project for sums not properly payable to CW, failing to construct the Project in a manner compliant with applicable building codes and regulations, failing to provide necessary commissioning materials for building systems and failing to obtain necessary signoffs from governmental agencies, including the New York City Department of Buildings. Moreover, numerous construction defects exist at the Project, such as leaking around doors and windows due to defective or missing flashing and caulking, improperly located curb-cuts, improperly pitched floors and window sills, unlevel floors, and numerous other items of punchlist work.

10. As a result, the Project's architect has not issued a certificate of substantial completion for the Project, and accordingly, CW has failed to substantially complete the Project.

11. In addition, by virtue of CW's failure to pay subcontractors and material suppliers, additional mechanics' liens have been filed against the Project.

12. On or about May 18, 2010, Cobble Hill notified Safeco of CW's failure to perform under the Agreement and sought a conference with CW and Safeco to discuss methods of obtaining such performance under the Agreement.

13. In or about May 2010, a telephone conference was held between representatives of Cobble Hill, CW and Safeco to discuss methods of obtaining such performance under the Agreement.

14. On or about June 23, 2010, Cobble Hill declared a default by CW under the Agreement, and on or about July 2, 2010, CW's right to complete with work required under the Agreement was terminated.

15. On or about July 2, 2010, Cobble Hill notified Safeco that it agreed to pay Safeco all unpaid sums properly payable under the Agreement in accordance with the terms thereof.

16. Pursuant to Paragraph 4 of the Bond, upon these notifications to Safeco, Safeco was obligated to undertake performance of CW's obligations under the Agreement and the completion of the Project.

17. On or about July 13, 2010, Cobble Hill notified Safeco of its failure to perform under the terms of the Bond, and that should Safeco fail to perform thereunder within fifteen days, it would be in default of its obligations to Cobble Hill.

18. To date, Safeco has failed to perform under the Bond.

## COUNT ONE
### (Breach of Contract)

19. Cobble Hill repeats, restates and realleges each and every allegation contained in paragraphs "1" through "18" of this Complaint as if set forth herein.

20. Cobble Hill has performed all of its obligations under the Agreement and the Bond, including payment for all amounts properly due and owing to CW or Safeco and providing requisite notices to CW and Safeco.

21. Safeco has breached its obligations to Cobble Hill under the Bond by failing to perform thereunder.

22. As a result of Safeco's breach, Cobble Hill has been damaged in an amount to be proven at trial, but reasonably believed to be at least $500,000.00.

23. By reason of the foregoing, Safeco is liable to Cobble Hill in an amount to be proven at trial, but reasonably believed to be at least $500,000.00.

## COUNT TWO
### (Bad Faith)

24. Cobble Hill repeats, restates and realleges each and every allegation contained in paragraphs "1" through "23" of this Complaint as if set forth herein.

25. Safeco has a duty under the Bond to provide Cobble Hill with the performance of CW's obligations under the Agreement.

26. The failure and refusal of Safeco to provide Cobble Hill with performance of its obligations under the Bond is wrongful and a breach of its obligations thereunder.

27. Further, Safeco acted in bad faith with regard to its obligations to Cobble Hill and violated the implied covenant of good faith and fair dealing in the performance of its duties and obligations under the Bond, in that Safeco failed and refused to provide its performance thereunder without justification and in disregard of its undertakings.

28. The refusal by Safeco to perform under the Bond was without good cause and made in bad faith.

29. As a direct and proximate consequence of the foregoing, Cobble Hill has been damaged in an amount to be proven at trial, but reasonably believed to be at least $500,000.00.

30. In addition, based on Safeco's bad faith conduct, Cobble Hill is entitled to punitive damages in an amount to be proven at trial.

31. By reason of the foregoing, Safeco is liable to Cobble Hill in an amount to be proven at trial, but reasonably believed to be at least $500,000.00, along with punitive damages in an amount to be proven at trial.

**WHEREFORE,** Cobble Hill demands judgment against Safeco as follows:

(1) On Count One, in an amount to be proven at trial, but reasonably believed to be at least $500,000.00;

(2) On Count Two, in an amount to be proven at trial, but reasonably believed to be at least $500,000.00, along with punitive damages in an amount to be proven at trial;

(3) The costs and disbursements of this action; and

  (4) Such other and further relief as the Court deems just and proper.

Dated: New York, New York
    August 18, 2010

                **TARTER KRINSKY & DROGIN LLP**
                Attorneys for Plaintiff

                By: _____
                David J. Pfeffer (DP-1317)
                1350 Broadway
                New York, New York 10018
                (212) 216-8000

Case 1:10-cv-03834-JBW -CLP   Document 1   Filed 08/19/10   Page 7 of 15

THE AMERICAN INSTITUTE OF ARCHITECTS



Bond No. 6554306

AIA Document A312

# Performance Bond

Any singular reference to Contractor, Surety, Owner or other party shall be considered plural where applicable.

CONTRACTOR (Name and Address):

Cauldwell Wingate Company, LLC
380 Lexington Avenue
New York, NY 10168

SURETY (Name and Principal Place of Business):

Safeco Insurance Company of America
1200 MacArthur Blvd.
Mahwah, NJ 07430

OWNER (Name and Address):

Cobble Hill Health Center Inc.
380 Henry Street
Brooklyn, NY 11201

CONSTRUCTION CONTRACT
Date:
Amount: $7,925,516.00    Seven Million Nine Hundred Twenty Five Thousand Five Hundred Sixteen Dollars and 00/100
Description (Name and Location):  Construction of 2 Story Building (Adult Day Care) located at 822 Lexington Avenue, Brooklyn, NY

BOND
Date (Not earlier than Construction Contract Date): July 9, 2008
Amount: $7,925,516.00    Seven Million Nine Hundred Twenty Five Thousand Five Hundred Sixteen Dollars and 00/100
Modifications to this Bond:                 ☐ None                [X] See Page 3

CONTRACTOR AS PRINCIPAL
Company:                          (Corporate Seal)
Cauldwell Wingate Company, LLC

Signature: _____
Name and Title:  ALAN HAINES, CIO

SURETY
Company:                          (Corporate Seal)
Safeco Insurance Company of America

Signature: _____
Name and Title: Fred Nicholson
                Attorney-in-Fact

(Any additional signatures appear on page 3)

(FOR INFORMATION ONLY - Name, Address and Telephone)
AGENT or BROKER:
Allied Group Holdings, Inc.
390 North Broadway
Jericho, NY 11753-2110
516-733-9200

OWNER'S REPRESENTATIVE (Architect, Engineer or other party) :

AIA DOCUMENT A312 • PERFORMANCE BOND AND PAYMENT BOND • DECEMBER 1984 ED. • AIA ®
THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVE., N.W., WASHINGTON, D.C. 20006                    A312-1984    1
THIRD PRINTING • MARCH 1987

1 The Contractor and the Surety, jointly and severally, bind themselves, their heirs, executors, administrators, successors and assigns to the Owner for the performance of the Construction Contract, which is incorporated herein by reference.

2 If the Contractor performs the Construction Contract, the Surety and the Contractor shall have no obligation under this Bond, except to participate in conferences as provided in Subparagraph 3.1.

3 If there is no Owner Default, the Surety's obligation under this Bond shall arise after:

    3.1 The Owner has notified the Contractor and the Surety at its address described in Paragraph 10 below that the Owner is considering declaring a Contractor Default and has requested and attempted to arrange a conference with the Contractor and the Surety to be held not later than fifteen days after receipt of such notice to discuss methods of performing the Construction Contract. If the Owner, the Contractor and the Surety agree, the Contractor shall be allowed a reasonable time to perform the Construction Contract, but such an agreement shall not waive the Owner's right, if any, subsequently to declare a Contractor Default; and

    3.2 The Owner has declared a Contractor Default and formally terminated the Contractor's right to complete the contract. Such Contractor Default shall not be declared earlier than twenty days after the Contractor and the Surety have received notice as provided in Subparagraph 3.1; and

    3.3 The Owner has agreed to pay the Balance of the Contract Price to the Surety in accordance with the terms of the Construction Contract or to a contractor selected to perform the Construction Contract in accordance with the terms of the contract with the Owner.

4 When the Owner has satisfied the conditions of Paragraph 3, the Surety shall promptly and at the Surety's expense take one of the following actions:

    4.1 Arrange for the Contractor, with consent of the Owner, to perform and complete the Construction Contract; or

    4.2 Undertake to perform and complete the Construction Contract itself, through its agents or through independent contractors; or

    4.3 Obtain bids or negotiated proposals from qualified contractors acceptable to the Owner for a contract for performance and completion of the Construction Contract, arrange for a contract to be prepared for execution by the Owner and the contractor selected with the Owner's concurrence, to be secured with performance and payment bonds executed by a qualified surety equivalent to the bonds issued on the Construction Contract, and pay to the Owner the amount of damages as described in Paragraph 6 in excess of the Balance of the Contract Price incurred by the Owner resulting from the Contractor's default; or

    4.4 Waive its right to perform and complete, arrange for completion, or obtain a new contractor and with reasonable promptness under the circumstances:

        .1 After investigation, determine the amount for which it may be liable to the Owner and, as soon as practicable after the amount is determined, tender payment therefor to the Owner; or

        .2 Deny liability in whole or in part and notify the Owner citing reasons therefor.

5 If the Surety does not proceed as provided in Paragraph 4 with reasonable promptness, the Surety shall be deemed to be in default on this Bond fifteen days after receipt of an additional written notice from the Owner to the Surety demanding that the Surety perform its obligations under this Bond, and the Owner shall be entitled to enforce any remedy available to the Owner. If the Surety proceeds as provided in Subparagraph 4.4, and the Owner refuses the payment tendered or the Surety has denied liability, in whole or in part, without further notice the Owner shall be entitled to enforce any remedy available to the Owner.

6 After the Owner has terminated the Contractor's right to complete the Construction Contract, and if the Surety elects to act under Subparagraph 4.1, 4.2, or 4.3 above, then the responsibilities of the Surety to the Owner shall not be greater than those of the Contractor under the Construction Contract, and the responsibilities of the Owner to the Surety shall not be greater than those of the Owner under the Construction Contract. To the limit of the amount of this Bond, but subject to commitment by the Owner of the Balance of the Contract Price to mitigation of costs and damages on the Construction Contract, the Surety is obligated without duplication for:

    6.1 The responsibilities of the Contractor for correction of defective work and completion of the Construction Contract;

    6.2 Additional legal, design professional and delay costs resulting from the Contractor's Default, and resulting from the actions or failure to act of the Surety under Paragraph 4; and

    6.3 Liquidated damages, or if no liquidated damages are specified in the Construction Contract, actual damages caused by delayed performance or non-performance of the Contractor.

7 The Surety shall not be liable to the Owner or others for obligations of the Contractor that are unrelated to the Construction Contract, and the Balance of the Contract Price shall not be reduced or set off on account of any such unrelated obligations. No right of action shall accrue on this Bond to any person or entity other than the Owner or its heirs, executors, administrators or successors.

8 The Surety hereby waives notice of any change, including changes of time, to the Construction Contract or to related subcontracts, purchase orders and other obligations.

9 Any proceeding, legal or equitable, under this Bond may be instituted in any court of competent jurisdiction in the location in which the work or part of the work is located and shall be instituted within two years after Contractor Default or within two years after the Contractor ceased working or within two years after the Surety refuses or fails to perform its obligations under this Bond, whichever occurs first. If the provisions of this Paragraph are void or prohibited by law, the minimum period of limitation avail-

AIA DOCUMENT A312 • PERFORMANCE BOND AND PAYMENT BOND • DECEMBER 1984 ED. • AIA ®
THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVE., N.W., WASHINGTON, D.C. 20006
THIRD PRINTING • MARCH 1987

A312-1984   2

able to sureties as a defense in the jurisdiction of the suit shall be applicable.

10 Notice to the Surety, the Owner or the Contractor shall be mailed or delivered to the address shown on the signature page.

11 When this Bond has been furnished to comply with a statutory or other legal requirement in the location where the construction was to be performed, any provision in this Bond conflicting with said statutory or legal requirement shall be deemed deleted herefrom and provisions conforming to such statutory or other legal requirement shall be deemed incorporated herein. The intent is that this Bond shall be construed as a statutory bond and not as a common law bond.

12 DEFINITIONS

   12.1 Balance of the Contract Price: The total amount payable by the Owner to the Contractor under the Construction Contract after all proper adjustments have been made, including allowance to the Contractor of any amounts received or to be received by the Owner in settlement of insurance or other claims for damages to which the Contractor is entitled, reduced by all valid and proper payments made to or on behalf of the Contractor under the Construction Contract.

   12.2 Construction Contract: The agreement between the Owner and the Contractor identified on the signature page, including all Contract Documents and changes thereto.

   12.3 Contractor Default: Failure of the Contractor, which has neither been remedied nor waived, to perform or otherwise to comply with the terms of the Construction Contract.

   12.4 Owner Default: Failure of the Owner, which has neither been remedied nor waived, to pay the Contractor as required by the Construction Contract or to perform and complete or comply with the other terms thereof.

MODIFICATIONS TO THIS BOND ARE AS FOLLOWS:

This bond is subject to the terms
and conditions of the attached Rider.

(Space is provided below for additional signatures of added parties, other than those appearing on the cover page.)

| CONTRACTOR AS PRINCIPAL | | SURETY | |
|---|---|---|---|
| Company: | (Corporate Seal) | Company: | (Corporate Seal) |
| Signature: _____ | | Signature: _____ | |
| Name and Title: | | Name and Title: | |
| Address: | | Address: | |

AIA DOCUMENT A312 • PERFORMANCE BOND AND PAYMENT BOND • DECEMBER 1984 ED. • AIA®
THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVE., N.W., WASHINGTON, D.C. 20006
THIRD PRINTING • MARCH 1987

A312-1984   3



Safeco Insurance Companies
Safeco Plaza
Seattle, WA 98185

| MULTIPLE OBLIGEE RIDER TO PERFORMANCE BOND | BOND# **6554306** |
|---|---|

WHEREAS, Heretofore, on or about the _____ DAY OF _____ , _____ ,
Cauldwell Wingate Company, LLC
hereinafter referred to as Principal, entered into a written agreement with Cobble Hill Health Center Inc.
_____ , hereinafter referred to as Original Obligee, for the construction
of 2 Story Building (Adult Day Care) located at 822 Lexington Avenue, Brooklyn, NY
_____ , and

WHEREAS, the Principal and the Safeco Insurance Company of America _____ , a Washington corporation
executed and delivered to the Original Obligee their joint and several Performance Bond, and
    WHEREAS,  Bank of America, N.A., 1111 East Main Street, 6th Flr., Richmond, VA 23219

_____ , hereinafter,
referred to as Additional Obligees, have requested the Principal and Surety to join with the Original Obligee in the execution and delivery of this Rider, and the Principal and Surety have agreed so to do upon the conditions herein stated.

NOW THEREFORE, in consideration of one dollar and other good and valuable consideration, receipt of which is acknowledged, the undersigned agree that the said Performance Bond shall be, and is, amended as follows:

1. The names of Bank of America, N.A., 1111 East Main Street, 6th Flr., Richmond, VA 23219

   _____ , as
   Additional Obligees, shall be added to said bond as named Obligees.

2. There shall be no liability under this bond to the Obligees, or any of them, unless the said Obligees, or any of them, shall make payments to the Principal strictly in accordance with the terms of said contract as to payments, and shall perform all of the other obligations to be performed under said contract at the time and in the manner therein set forth; all of the acts of one Obligee being binding on the other.

3. The aggregate liability of the Surety under said bond to the Original Obligee and Additional Obligees, as their interests may appear, is limited to the penal sum of the said bond.

4. The Surety, as its option, may make any payment under said bond by check issued jointly to the Original Obligee and Additional Obligees.

5. The purpose of this Rider is to add Additional Obligees only and is not intended to affect or alter the terms and conditions of this bond.

Page 1 of 2 Pages

S-4644/SA 10/99        Safeco and the Safeco logo are registered trademarks of Safeco Corporation

XDP

Signed, sealed and dated this ___9th___ day of _____July_____ __2008__.

(Seal if corporation)
Attest

_[signature]_

Cobble Hill Health Center Inc.
_____ Original Obligee
By _[signature]_

(Seal if corporation)
Attest
_____

Bank of America, N.A.
_____ Additional Obligee
By _____

(Seal if corporation)
Attest
_____

_____ Additional Obligee
By _____

(Seal if corporation)
Attest
_____

_____ Additional Obligee
By _____

(Seal if corporation)
Attest
_____

_____ Additional Obligee
By _____

(Seal if corporation)
Attest
_____

_____ Additional Obligee
By _____

By _____

Safeco Insurance Company of America
By _[signature]_
   Attorney-in-Fact
   Fred Nicholson

Caldwell Wingate Company, LLC
_____ Principal
By _[signature]_
   ALAN HAINES, CIO

Optional Counter Signature Area

[SAFECO INSURANCE COMPANY OF AMERICA CORPORATE SEAL 1953 STATE OF WASHINGTON]

Page 2 of 2 Pages

S-4644/SA 10/99

ACKNOWLEDGEMENT FOR CONTRACTOR

ACKNOWLEDGEMENT FOR CONTRACTOR, IF A LIMITED LIABILITY COMPANY

STATE OF New York,)
COUNTY OF, NY )

ON THE 10 DAY OF July 2008, BEFORE ME PERSONALLY APPEARED Alan Haines TO ME KNOWN AND KNOWN TO ME TO BE THE CIO OF Cauldwell Wingate Company, LLC A LIMITED LIABILITY COMPANY, DESCRIBED IN AND WHO EXECUTED THE FOREGOING INSTRUMENT AND ACKNOWLEDGED TO ME THAT (S)HE EXECUTED THE SAME AS AND FOR THE ACT AND DEED OF SAID LIMITED LIABILITY COMPANY.

KIN K TAM
Notary Public - State of New York
No. 01TA6084518
Qualified in Queens County
My Commission Expires 12/09/2010

Notary Public

ACKNOWLEDGEMENT OF SURETY

STATE OF NEW YORK,)
COUNTY OF Nassau,)

ON THE 9th DAY OF July, 2008, BEFORE ME PERSONALLY CAME Fred Nicholson TO ME KNOWN, WHO, BEING BY ME DULY SWORN, DID DEPOSE AND SAY THAT (S)HE RESIDES AT Nassau County, NY THAT (S)HE IS THE ATTORNEY-IN-FACT OF Safeco Insurance Company of America THE CORPORATION DESCRIBED IN AND WHICH EXECUTED THE ABOVE INSTRUMENT; THAT (S)HE KNOWS THE SEAL OF SAID CORPORATION; THAT ONE OF THE SEALS AFFIXED TO THE FOREFGOING INSTRUMENT IS SUCH SEAL; THAT IT WAS SO AFFIXED BY ORDER OF THE BOARD OF DIRECTORS OF SAID CORPORATION; AND THAT (S)HE SIGNED HIS/HER NAME THERETO BY LIKE ORDER.

FERN PERRY
NOTARY PUBLIC, State of New York
No. 01PE4982178
Qualified in Nassau County
Commission Expires May 28, 2011

Notary Public



**POWER OF ATTORNEY**

Safeco Insurance Company of America
General Insurance Company of America
Safeco Plaza
Seattle, WA 98185

No. 9980

**KNOW ALL BY THESE PRESENTS:**

That **SAFECO INSURANCE COMPANY OF AMERICA** and **GENERAL INSURANCE COMPANY OF AMERICA**, each a Washington corporation, does each hereby appoint

\*\*\*\*\*\*\*\*\*GEORGE O. BREWSTER; THERESA J. FOLEY; DAVID A. GOLDSTEIN; WILLIAM A. MARINO; FRED NICHOLSON; FERN PERRY; NANCY SCHNEE; VINCENT A. WALSH; Jericho, New York\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

its true and lawful attorney(s)-in-fact, with full authority to execute on its behalf fidelity and surety bonds or undertakings and other documents of a similar character issued in the course of its business, and to bind the respective company thereby.

**IN WITNESS WHEREOF, SAFECO INSURANCE COMPANY OF AMERICA** and **GENERAL INSURANCE COMPANY OF AMERICA** have each executed and attested these presents

this **11th** day of **December**, **2007**

_Stephanie Daley-Watson_                                   _T A Mikolajewski_

**STEPHANIE DALEY-WATSON, SECRETARY**          **TIM MIKOLAJEWSKI, SENIOR VICE-PRESIDENT, SURETY**

**CERTIFICATE**

Extract from the By-Laws of **SAFECO INSURANCE COMPANY OF AMERICA** and of **GENERAL INSURANCE COMPANY OF AMERICA:**

"Article V, Section 13. - FIDELITY AND SURETY BONDS ... the President, any Vice President, the Secretary, and any Assistant Vice President appointed for that purpose by the officer in charge of surety operations, shall each have authority to appoint individuals as attorneys-in-fact or under other appropriate titles with authority to execute on behalf of the company fidelity and surety bonds and other documents of similar character issued by the company in the course of its business... On any instrument making or evidencing such appointment, the signatures may be affixed by facsimile. On any instrument conferring such authority or on any bond or undertaking of the company, the seal, or a facsimile thereof, may be impressed or affixed or in any other manner reproduced; provided, however, that the seal shall not be necessary to the validity of any such instrument or undertaking."

Extract from a Resolution of the Board of Directors of **SAFECO INSURANCE COMPANY OF AMERICA** and of **GENERAL INSURANCE COMPANY OF AMERICA** adopted July 28, 1970.

"On any certificate executed by the Secretary or an assistant secretary of the Company setting out,
  (i) The provisions of Article V, Section 13 of the By-Laws, and
  (ii) A copy of the power-of-attorney appointment, executed pursuant thereto, and
  (iii) Certifying that said power-of-attorney appointment is in full force and effect,
the signature of the certifying officer may be by facsimile, and the seal of the Company may be a facsimile thereof."

I, Stephanie Daley-Watson, Secretary of **SAFECO INSURANCE COMPANY OF AMERICA** and of **GENERAL INSURANCE COMPANY OF AMERICA**, do hereby certify that the foregoing extracts of the By-Laws and of a Resolution of the Board of Directors of these corporations, and of a Power of Attorney issued pursuant thereto, are true and correct, and that both the By-Laws, the Resolution and the Power of Attorney are still in full force and effect.

**IN WITNESS WHEREOF,** I have hereunto set my hand and affixed the facsimile seal of said corporation

this _____ day of **JUL - 9 2008**

 

_Stephanie Daley-Watson_

**STEPHANIE DALEY-WATSON, SECRETARY**

Safeco® and the Safeco logo are registered trademarks of Safeco Corporation.

S-0974/DS 4/05                                                                                                           WEB PDF



SAFECO INSURANCE COMPANY OF AMERICA

FINANCIAL STATEMENT — DECEMBER 31, 2007

| Assets | | Liabilities | |
|---|---:|---|---:|
| Cash and Bank Deposits | $ 53,483,126 | Unearned Premiums | $ 728,534,002 |
| *Bonds — U.S Government | 16,728,067 | Reserve for Claims and Claims Expense | 1,560,913,950 |
| *Other Bonds | 2,478,711,287 | Funds Held Under Reinsurance Treaties | 430,979 |
| *Stocks | 499,235,954 | Reserve for Dividends to Policyholders | 2,421,611 |
| Real Estate | 0 | Additional Statutory Reserve | — |
| Agents' Balances or Uncollected Premiums | 625,553,621 | Reserve for Commissions, Taxes and Other Liabilities | 936,336,881 |
| Accrued Interest and Rents | 33,936,490 | Total | $3,228,637,423 |
| Other Admitted Assets | 359,599,572 | Special Surplus Funds......... $   226,334 | |
| | | Capital Stock..................   5,000,000 | |
| | | Paid in Surplus................ 275,002,873 | |
| | | Unassigned Surplus............ 558,381,487 | |
| Total Admitted Assets | $4,067,248,117 | Surplus to Policyholders | 838,610,694 |
| | | Total Liabilities and Surplus | $4,067,248,117 |



\* Bonds are stated at amortized or investment value; Stocks at Association Market Values. Securities carried at $124,368,976 are deposited as required by law.

I, TIM MIKOLAJEWSKI, Senior Vice-President of SAFECO Insurance Company of America, do hereby certify that the foregoing is a true, and correct statement of the Assets and Liabilities of said Corporation, as of December 31, 2007, to the best of my knowledge and belief.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed the seal of said Corporation at Seattle, Washington, this 1st day of March, 2008.

*TAMikolajewski*
Senior Vice-President

S-1262a 3/08                                                                                          ® A registered trademark of SAFECO Corporation